STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Gary L. GORDON, Defendant-Appellant.

Supreme Court

*No. 01–1679–CR. Oral argument October 15, 2002.—Decided June 27, 2003.*

2003 WI 69

(Also reported in 663 N.W.2d 765.)

381

For the plaintiff-respondent-petitioner the cause was argued by *James M. Freimuth,* assistant attorney general, with whom on the briefs was *James E. Doyle,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Steven P. Weiss,* assistant state public defender.

¶ 1. DIANE S. SYKES, J. Gary Gordon was charged with three criminal counts arising out of a domestic dispute: violating a domestic abuse injunction, disorderly conduct while armed, and second-degree recklessly endangering safety. He testified in his own defense and admitted to facts constituting the enhanced disorderly conduct count, to wit, that when the police arrived in response to the domestic violence dispatch, he grabbed two knives to hold the officers at bay while he attempted to evade arrest, and remained armed with those knives while the police pursued him on foot through the neighborhood.

¶ 2. During closing argument, Gordon's trial counsel argued for acquittal on the two more serious charges. As to the disorderly conduct count, however, Gordon's attorney conceded that "obviously running around the neighborhood with two knives is disorderly conduct and it is disorderly conduct while armed." The jury returned verdicts of guilty all three counts.

¶ 3. On appeal, Gordon argued that his trial counsel's closing argument concession of guilt on the disorderly conduct while armed count constituted ineffective assistance of counsel of a type that is conclusively presumed to be prejudicial, automatically requiring a new trial. He also claimed instructional error: the

jury instruction for the "while armed" penalty enhancer on the disorderly conduct charge did not include the *Peete* "nexus" instruction, which is required when the defendant is charged with committing the underlying crime "while possessing a dangerous weapon." *See State v. Peete,* 185 Wis. 2d 4, 9, 517 N.W.2d 149 (1994); Wis. Stat. § 939.63 (2001–2002).[1] Because the penalty enhancer is an element of the offense, Gordon contended that his trial counsel's failure to object to this error was per se prejudicial and therefore automatically reversible.

¶ 4. The court of appeals agreed, concluding that the attorney's concession was the functional equivalent of a guilty plea, which is a constitutional prerogative of the accused, not his lawyer. *State v. Gordon,* 2002 WI App 53, ¶ 25, 250 Wis. 2d 702, 641 N.W.2d 183. The court of appeals also concluded that the failure to object to the erroneous jury instruction was per se prejudicial. *Id.,* ¶¶ 32–38.

¶ 5. We reverse. The concession by counsel was not the functional equivalent of a guilty plea under the circumstances of this case, where it came in closing argument, on one count in a multiple-count case, after full adversarial testing of the State's case and after the defendant had admitted on the witness stand the facts constituting the offense. In addition, the omission of the *Peete* instruction is subject to harmless error analysis under *Neder v. United States,* 527 U.S. 1 (1999), and *State v. Harvey,* 2002 WI 93, 254 Wis. 2d 442, 647 N.W.2d 189. Therefore, the failure to object to the omission was not per se prejudicial for purposes of ineffective assistance of counsel analysis. We reverse

[1] All subsequent statutory references are to the 2001–2002 version of the Wisconsin Statutes.

*State v. Howard,* 211 Wis. 2d 269, 290–95, 564 N.W.2d 753 (1997), *State v. Avila,* 192 Wis. 2d 870, 891–93A, 532 N.W.2d 423 (1995), and *State v. Krueger,* 240 Wis. 2d 644, 649–51, 632 N.W.2d 211 (Ct. App. 2000), to the extent that those cases established a rule of automatic reversal where a jury instruction omits an element of the offense.

## I. FACTS AND PROCEDURAL HISTORY

¶ 6.  Margaret Wilder obtained a domestic abuse injunction against Gary Gordon on October 29, 1998. Gordon was Wilder's sometime boyfriend of 12 years who occasionally lived with her, though his drug and alcohol use strained the relationship. Despite the injunction, Wilder allowed Gordon to live with her and her six-year-old grandson in their Milwaukee apartment beginning sometime during the late spring of 1999, and continuing into the fall of that year. Wilder was wheelchair-bound and testified at trial that she had allowed Gordon to live with her to help care for her; Gordon testified that he was unaware when he resumed living with Wilder that the injunction was still in effect.

¶ 7.  On the evening of October 1, 1999, Gordon was at Wilder's apartment and had nearly finished off a 32–ounce bottle of beer when he and Wilder got into an argument. Wilder testified that Gordon was "agitated" and "verbally abusive." She also feared that Gordon had been "doing drugs," based upon certain behaviors and characteristics that she had observed in him when he had previously done so.

¶ 8.  Wilder called the police to come to her apartment and enforce the injunction against Gordon. Officers Matthew Bongard and John Amberg were dispatched, and when they arrived outside the apartment,

Gordon realized they were there for him and decided to attempt to "escape" by arming himself with two knives. He testified that he picked up the first knife because he "didn't want to go to jail," and then grabbed a second knife.

¶ 9. Wilder's grandson let Officer Bongard into the apartment. From her wheelchair in the living room, Wilder shouted, "He's right there and he has some knives," referring to Gordon, who was standing in an interior hallway.

¶ 10. Officer Bongard drew and pointed his gun at Gordon, ordering him to drop the knives. Officer Amberg then ran inside to help. Gordon continually refused the officer's commands to drop the knives, saying that he "wasn't going to drop no fucking knives," and telling the officers, "I ain't going to no jail." The officers radioed for backup. Officer Amberg described the knives as a "butcher style knife" and a "steak knife."

¶ 11. Still armed with the knives, Gordon fled to a back bedroom and closed the door. Because this room had a door to the backyard, Officer Amberg went outside intending to secure the area. A neighbor had seen Gordon run outside and hide in some bushes, and alerted Officer Amberg.

¶ 12. Officer Bongard joined the search outside and spotted Gordon in the hedges, a few houses away from Wilder's apartment. Gordon was still clutching the knives. Officer Bongard drew his gun, yelled for Gordon to drop the knives, and ordered him to "freeze." Gordon did not comply, and the officer, at least one more time, ordered him to drop the knives. Gordon then stepped towards Officer Bongard and started to raise the knives. Gordon testified that he was attempting to surrender the knives. Interpreting Gordon's movement as an imminent attack rather than a surrender, Officer Bon-

gard fired two shots at Gordon in quick succession. Gordon was hit in the arm and the stomach. The officers immediately summoned medical help.

¶ 13. Gordon was charged in Milwaukee County Circuit Court with three crimes: violation of a domestic abuse injunction, contrary to Wis. Stat. § 813.12(8)(a); disorderly conduct while armed, contrary to Wis. Stat. §§ 947.01 and 939.63; and second-degree recklessly endangering safety, contrary to Wis. Stat. § 941.30(2). At trial, he testified that when he first saw that police officers had arrived at the apartment, he armed himself with two knives in order to set in motion his escape: "Well, when I seen them coming I got up and I walked up and he came in. And then that's when, you know, I picked up the knife because I didn't want to go to jail. I ain't going to jail. You know what I'm saying?" He repeatedly testified that the reason he armed himself with the knives was to avoid going to jail:

> Q: And you testified, sir, while you were being asked by your attorney these questions right in front of the jury here that you grabbed the knives when you realized that the officers were coming in because, quote, I am not going to jail. Is this correct? Is this what you told us?
>
> A: Yeah. I said, "I'm not fitting to go to jail." They [the officers] told me that I was going to jail. I said, "I'm not going to go to no jail."
>
> Q: That's why you grabbed the knife?
>
> A: Yes.
>
> Q: Did you grab both knives at the same time?
>
> A: I grabbed one, then I grabbed the other one off the counter.

. . . .

Q: So, the presence of these two knives you armed yourself with in the kitchen of this apartment was for the purposes of deterring these officers from grabbing you so you wouldn't go to jail, is that right?

A: Well, you could say so, yes.

¶ 14. Regarding the confrontation with the police outside the apartment, Gordon testified:

A: Yeah, he [the officer] seen me. We both like met up on each other as he came through the yard. We caught each other's eye and he turned to me and told me to freeze.

Q: Did he . . . tell you repeatedly to drop the knives?

A: Twice he said, "Drop the knives, drop the fucking knives." Pardon my language. That is the exact words he said.

¶ 15. In closing argument, Gordon's trial counsel focused on disputing Gordon's guilt on the felony charge of second-degree recklessly endangering safety and the misdemeanor charge of violating the domestic abuse injunction. He said little, however, about the misdemeanor charge of disorderly conduct while armed, save for the following:

But I want to be very clear there is no doubt, there is no question that at the moment when Officer Bongard shot Mr. Gordon, Mr. Gordon was subject to arrest for disorderly conduct while armed. Obviously running around the neighborhood with two knives is disorderly conduct and it is disorderly conduct while armed. But in and of itself that conduct does not create an unreasonable and substantial risk of death or great bodily harm. . . . Walking around the neighborhood with two knives doesn't create that kind of risk to anyone.

388

¶ 16. Gordon's trial counsel assailed the State's case on the first and third counts (violation of a domestic abuse injunction and second-degree recklessly endangering safety), contrasting the weight of the evidence on the disorderly conduct charge with the lack of evidence on the other two more serious charges.[2] He concluded his argument by saying: "I'm asking you folks to acquit Mr. Gordon on the first and third charges [violating a domestic abuse injunction and second-degree recklessly endangering safety]." He said nothing more of the enhanced disorderly conduct charge stemming from Gordon's use of the knives as part of his attempt to escape arrest.

¶ 17. The jury was instructed on the "while armed" enhancement element of the disorderly conduct charge as follows:

> [C]ount 2 alleges not only that the defendant committed the crime of disorderly conduct, but also that he did so while *possessing, using, or threatening to use* a dangerous weapon. If you find the defendant guilty of the charge in count 2, you must answer the following question: Did the defendant commit the crime of disorderly conduct while *possessing, using or threatening to use* a dangerous weapon?

(emphasis added); *see also* Wis. Stat. § 939.63 and Wis JI—Criminal 990. In order to be found guilty of the "possession" form of a "while armed" enhanced crime under § 939.63, a defendant must be found to have possessed the weapon to "facilitate" the underlying crime. *See Peete,* 185 Wis. 2d at 9. Here, however, while all three statutory alternatives for enhancement—

---

[2] Wilder testified that she had allowed Gordon to live with her and to help care for her. Gordon testified that, based upon this, he did not believe the injunction was still in effect.

"possessing, using or threatening to use a dangerous weapon"—were given, the *Peete* "nexus" instruction was omitted.[3] Gordon's attorney did not object to the omission.

¶ 18.   The jury found Gordon guilty on all three counts, and the circuit court, the Honorable Richard J. Sankovitz, imposed consecutive sentences: two years on the felony second-degree recklessly endangering safety conviction, nine months on the misdemeanor domestic abuse injunction violation, and six months on the disorderly conduct while armed conviction. Gordon filed a post-conviction motion alleging, among other things, ineffective assistance of counsel stemming from the closing argument concession and the failure to object to the omission of the *Peete* instruction. The circuit court denied the motion by written decision, without a hearing, concluding that there was no prejudice.

¶ 19.   Gordon appealed, and the court of appeals affirmed Gordon's conviction for second-degree recklessly endangering safety, but reversed his convictions for violating a domestic abuse injunction and for disorderly conduct while armed.[4] *State v. Gordon,* 2002 WI

---

[3] A *Peete* "nexus" instruction is not necessary where the enhancer is charged on the basis of the defendant's use or threat to use a dangerous weapon, because in such cases a nexus exists as a primary matter. *See State v. Peete,* 185 Wis. 2d 4, 18, 517 N.W.2d 149 (1994) ("If a defendant commits a crime while using or threatening to use a dangerous weapon, a nexus is established.").

[4] The reversal of the conviction for violating a domestic abuse injunction is not before us on this review. Subsequent to the court of appeals decision, this court decided *State v. Harvey,* 2002 WI 93, ¶ 35, 254 Wis. 2d 442, 647 N.W.2d 189, and *State v. Tomlinson,* 2002 WI 91, ¶¶ 58–59, 254 Wis. 2d 502, 648 N.W.2d

App 53, 250 Wis. 2d 702, 641 N.W.2d 183. The court of appeals concluded that the closing argument concession by Gordon's attorney was the functional equivalent of a guilty plea, a fundamental decision which the accused, not his lawyer, has the ultimate authority to make. *Id.,* ¶¶ 25–27. The court remanded for a *Machner* hearing to determine whether Gordon had consented to the closing argument concession. *Id.,* ¶ 31 (citing *State v. Curtis,* 218 Wis. 2d 550, 554–55, 582 N.W.2d 409 (Ct. App. 1998)(holding that a *Machner* hearing is a prerequisite to a claim of ineffective assistance of counsel)). The court of appeals also concluded that the omission of the *Peete* instruction was per se prejudicial and automatically reversible under *Krueger. See id.,* ¶ 38 (citing *Krueger,* 240 Wis. 2d 644, ¶¶ 12, 15). We accepted review, 2002 WI 48, 252 Wis. 2d 148, 644 N.W.2d 685, and now reverse.

## II. DEFENSE COUNSEL'S CLOSING ARGUMENT CONCESSION

¶ 20.   The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const., amend. VI; *see also* Wis. Const. art. I, § 7.

■

¶ 21.   The decision to plead guilty is one of several "fundamental decisions regarding the case" over which the accused, not his lawyer, has the "ultimate authority." *Jones v. Barnes,* 463 U.S. 745, 751 (1983)(citing *Wain-*

367, adopting and applying *Neder v. United States,* 527 U.S. 1 (1999), and holding that harmless error analysis is appropriate in a case of an erroneous jury instruction, including one that omits an element of an offense.

*wright v. Sykes,* 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring)). However, counsel is entrusted with the authority to make "tactical" decisions regarding trial strategy. *See, e.g., Faretta v. California,* 422 U.S. 806, 820 (1975).

■

¶ 22.   Gordon's attack on his trial counsel's closing argument concession of guilt on the disorderly conduct count is made in the context of a claim of ineffective assistance of counsel, which is "squarely governed" by the United States Supreme Court's decision in *Strickland v. Washington,* 466 U.S. 668 (1984).[5] *See Williams v. Taylor,* 529 U.S. 362, 390 (2000). The familiar *Strickland* formulation of constitutional ineffectiveness is:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687. Under *Strickland,* "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

---

[5] The dissent contends that this ineffective assistance of counsel claim is not governed by *Strickland v. Washington,* 466 U.S. 668 (1984), citing a dissent in *Haynes v. Cain,* 298 F.3d 375, 385 (5th Cir. 2002) (Parker, J., dissenting). Dissent, ¶ 71 n.30. We know of no authority for the assertion that ineffective assistance of counsel claims are not governed by *Strickland's* two-pronged analysis of deficient performance and prejudice.

¶ 23. "To establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.' " *Williams,* 529 U.S. at 390–91 (quoting *Strickland,* 466 U.S. at 688). "To establish prejudice he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id.* at 391 (quoting *Strickland,* 466 U.S. at 694).

¶ 24. The court of appeals held that the defense attorney's closing argument concession on the disorderly conduct while armed count was the functional equivalent of a guilty plea, improper if done without Gordon's consent, and conclusively presumed to be prejudicial. *Gordon,* 250 Wis. 2d 702, ¶ 25. We disagree. A guilty plea waives trial, cross-examination of witnesses, the right to testify and call witnesses in one's own defense, and the right to a unanimous jury verdict of guilt beyond a reasonable doubt. The concession in this case had none of these effects. Gordon had a jury trial, cross-examined the State's witnesses, testified in his own defense, and was adjudged guilty beyond a reasonable doubt by a unanimous jury.

¶ 25. Gordon's own testimony conceded the facts constituting the disorderly conduct while armed count. In summary, he admitted the following: that he had been drinking and had been involved in a domestic dispute with Wilder; that when the police arrived, he armed himself with two knives to facilitate his escape; that he refused the officer's commands to drop the knives; that he fled the apartment while still armed with the knives and was pursued through the neighbor-

hood by the two police officers; that when the officers caught up with him they twice commanded him to drop the knives; that he initially refused to do so; and that when he changed his mind and started to surrender the knives, the police shot him in the arm and the stomach.

¶ 26. Under these circumstances it was not deficient performance for Gordon's attorney to concede the overwhelming weight of the evidence on the misdemeanor disorderly conduct count and focus his closing argument on the more serious charges in the case, which, unlike the disorderly conduct count, remained contestable after Gordon's testimony. While conceding that the facts out of Gordon's own mouth amounted to disorderly conduct while armed, Gordon's attorney argued vigorously for acquittal on the more serious felony and misdemeanor counts. This was a reasonable tactical approach under the circumstances, plainly calculated to maintain credibility with the jury and enhance the prospects of acquittal on the two more serious charges. Gordon's attorney did not concede anything that Gordon had not admitted as a factual matter on the witness stand; the concession, therefore, did not conflict with Gordon's own testimonial admissions. Accordingly, the defense attorney's conduct in this regard did not fall below an objective standard of reasonableness, nor was it prejudicial.

¶ 27. Gordon cites a number of cases that have held an attorney's concession of guilt during trial to be the functional equivalent of a guilty plea, and presumptively prejudicial if done without the defendant's consent, but each of these cases is factually distinguishable from this case, because each is characterized by one or more of the following: 1) a concession to *all* the charges (or the *only* charge) in the case; 2) a concession made in opening statement before *any* adversarial or eviden-

tiary testing had occurred; 3) a concession made in the presence of a contemporaneous objection from the defendant; or 4) a concession made in direct conflict with the defendant's testimony.[6]

¶ 28.   The more analogous cases hold that where counsel concedes guilt on a lesser count in a multiple-count case, in light of overwhelming evidence on that count and in an effort to gain credibility and win acquittal on the other charges, the concession is a reasonable tactical decision and counsel is not deemed to have been constitutionally ineffective. *See, e.g., United States v. Gomes,* 177 F.3d 76, 83–84 (1st Cir. 1999), *cert. denied,* 528 U.S. 911 (1999); *United States v. Wilks,* 46 F.2d 640, 644 (7th Cir. 1995); *United States v. Tabares,* 951 F.2d 405, 409 (1st Cir. 1991); *Underwood v. Clark,* 939 F.2d 473, 474 (7th Cir. 1991); *United States v. Simone,* 931 F.2d 1186, 1194–97 (7th Cir. 1991);[7] *Mc-*

---

[6] *See Haines v. Cain,* 272 F.3d 757, 762 (5th Cir. 2001); *United States v. Swanson,* 943 F.2d 1070, 1074 (9th Cir. 1991); *United States v. Simone,* 931 F.2d 1186 (7th Cir. 1991); *Francis v. Spraggins,* 720 F.2d 1190, 1193 (11th Cir. 1983); *Wiley v. Sowders,* 647 F.2d 642 (6th Cir. 1981); *Brown v. Rice,* 693 F.Supp. 381, 395–97 (W.D.N.C. 1988); *Nixon v. Singletary,* 758 So.2d 618 (Fla. 2000); *Childers v. State,* 782 So. 2d 513, 517 (Fla. Dist. Ct. App. 2001); *People v. Hattery,* 488 N.E.2d 513 (Ill. 1985); *State v. Carter,* 14 P.3d 1138, 1141, 1148 (Kan. 2000); *State v. Arnold,* 706 So. 2d 578, 584–86 (La. Ct. App. 1998); *People v. Fisher,* 326 N.W.2d 537, 539–40 (Mich. Ct. App. 1982); *State v. Moore,* 458 N.W.2d 90, 95–96 (Minn. 1990); *Wiley v. State,* 517 So.2d 1373, 1381–82 (Miss. 1987); *Jones v. State,* 877 P.2d 1052, 1056–57 (Nev. 1994); *State v. Anaya,* 592 A.2d 1142, 1145–47 (N.H. 1991); *State v. Harbison,* 337 S.E.2d 504, 506 (N.C. 1985).

[7] The dissent's citation and quotation from *United States v. Simone,* 931 F.2d 1186 (7th Cir. 1991), is misleading. Dissent, ¶ 61 n.23. *Simone* says this: "But when the admissions concern

*Clain v. Hill,* 52 F.Supp. 2d 1133, 1143 (C.D. Cal. 1999); *Ramirez v. United States,* 17 F.Supp. 2d 63, 67–68 (D.R.I. 1998); *United States v. Pledger,* 887 F.Supp. 1400, 1406–07 (D. Kan. 1995); *Williams v. State,* 791 So.2d 895, 899–900 (Miss. Ct. App. 2001); *State v. Silva,* 24 P.3d 477, 483 (Wash. Ct. App. 2001); *Richardson v. United States,* 698 A.2d 442, 444–45 (D.C. Ct. App. 1997).

¶ 29. *Underwood* is one of the leading cases in this area:

> [The defendant] argues that it is ineffective assistance of counsel per se for a lawyer to concede his client's guilt without the client's consent. What is true, although it really has nothing to do with ineffective assistance, is that a defendant cannot be made to plead guilty against his wishes, however wise such a plea would be. And if his lawyer told the jury in closing argument, "my client has decided to plead guilty," that would be a forced plea, and would deprive the defendant of his right to put the prosecution to its proof of guilt. It is otherwise if in closing argument counsel acknowledges what the course of the trial has made undeniable—that on a particular count the evidence of guilt is overwhelming. Such acknowledgment can be a sound tactic when the evidence is indeed overwhelming (and there is no reason to suppose that any juror doubts this) and when the count in question is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury. Such was this case . . . . [T]here was no way in the world that the jury was going to acquit [the defendant] of [the lesser charge]. The lawyer did not plead [the defendant] guilty; he merely acknowledged the weight of the evidence of [the lesser

only some of the charges to be proven, or when they do not actually concede guilt, counsel's concessions have been treated as tactical retreats and deemed to be effective assistance." *Simone,* 931 F.2d at 1196.

charge] in order to contrast it with the lack of direct evidence [on the more serious charge]. The lawyer's tactic was reasonable, and though . . . we cannot say that it had the consent of the client, a lawyer is not required to consult with his client on tactical moves.

*Underwood,* 939 F.2d at 474 (7th Cir. 1991) (internal citations omitted).

¶ 30. We reach the same conclusion here. The circumstances of this case do not warrant a rule of per se ineffectiveness. Defense counsel's closing argument concession was not constitutionally deficient, i.e., it did not fall below an objective standard of reasonableness within the meaning of *Strickland. Strickland,* 466 U.S. at 688. Beyond that, Gordon was not prejudiced. He has not demonstrated a reasonable probability that the result of the proceeding would have been different without the attorney's concession. *Strickland,* 466 U.S. at 694. After Gordon's testimony, "there was no way in the world that the jury was going to acquit" on the disorderly conduct while armed count. *Underwood,* 939 F.2d at 474. The closing argument concession did not constitute ineffective assistance of counsel.

## III. THE *PEETE* ERROR

¶ 31. As we have noted, the circuit court instructed the jury on all three statutory alternatives for commission of disorderly conduct while armed for purposes of the "while armed" penalty enhancer: 1) possession; 2) use; and 3) threat of use of a dangerous weapon. Wis. Stat. § 939.63(1). Ordinarily, where the State alleges that the defendant possessed a dangerous weapon in the commission of a crime for purposes of the "while armed" penalty enhancer, a *Peete* nexus instruction is required. *Peete,* 185 Wis. 2d at 9. The nexus instruction

explains that in order to be found guilty of "possessing" a dangerous weapon in the commission of the underlying crime, the defendant must have possessed the dangerous weapon to "facilitate" the underlying crime. *Id.* Here, the *Peete* nexus instruction on the possession alternative was omitted.

¶ 32. In contrast, where a defendant uses or threatens to use a dangerous weapon in the commission of a crime, a nexus exists for purposes of the penalty enhancer as a matter of law.[8] Here, the evidence fully supports a beyond-a-reasonable-doubt conclusion that Gordon used the knives in the commission of the crime of disorderly conduct. Indeed, the knives were part and parcel of the disorderly conduct itself; Gordon's possession of the knives in his effort to escape arrest was largely what made his conduct disorderly in the first place. Nevertheless, the jury was instructed on the possession alternative, absent a *Peete* nexus instruction, and this was error. There was no objection, however; therefore, the error has been challenged in the context of Gordon's ineffective assistance of counsel claim.

---

[8] *Peete,* 185 Wis. 2d at 18:

> If a defendant commits a crime while using or threatening to use a dangerous weapon, a nexus *is established.* The defendant's use or threat to use a dangerous weapon puts the crime victim in fear, protects the defendant, and protects any contraband in the defendant's possession. These effects of the use or threat to use a weapon facilitate commission of the predicate offense. Thus the nexus requirement we establish, that a defendant possess the weapon to facilitate commission of the predicate offense, makes the language "while possessing" in § 939.63 parallel in meaning to "while . . . using" or "while . . . threatening to use."

*Id.* at 18 (emphasis added, ellipses in original).

¶ 33. Here, too, the court of appeals followed a rule of per se prejudice, citing *Krueger. See Gordon,* 250 Wis. 2d 702, ¶ 38. *Krueger* held that where defense counsel fails to object to a jury instruction that omits an essential element of the crime, prejudice under *Strickland* is conclusively presumed and reversal is automatic. *Krueger,* 240 Wis. 2d 644, ¶¶ 6–15. *Krueger* relied on two cases from this court, *Howard* and *Avila,* which held that harmless error analysis does not apply to an erroneous jury instruction that omits an element of the offense. *Id.,* ¶¶ 11–12 (citing *Howard,* 211 Wis. 2d at 292, and *Avila,* 192 Wis. 2d at 893A).

¶ 34. *Krueger, Howard,* and *Avila* cannot survive our decision last term in *Harvey,* in which we applied harmless error analysis to an erroneous jury instruction that operated as a mandatory conclusive presumption on an element of a penalty enhancer. *Harvey,* 254 Wis. 2d 442, ¶¶ 47–49. *Harvey* adopted the United States Supreme Court's harmless error analysis in *Neder,* which reaffirmed and refined the harmless error test of *Chapman v. California,* 386 U.S. 18 (1967). *Harvey,* 254 Wis. 2d 442, ¶¶ 44–46; *see also State v. Tomlinson,* 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d 367.

¶ 35. In *Harvey,* we began by citing *Neder*'s basic premise: that while a "limited class of errors" is deemed "structural," requiring automatic reversal regardless of any effect on the outcome (i.e., complete denial of counsel; a biased trial judge; racial discrimination in the selection of a grand jury; denial of self-representation at trial; denial of public trial; or a defective reasonable doubt instruction), most errors, including constitutional ones, are reviewed for harmlessness. *Harvey,* 254 Wis. 2d 442, ¶ 37 (citing *Neder,* 527 U.S. at 7).

¶ 36.   We went on to note *Neder*'s reaffirmation of the *Chapman* test for harmless error: " 'That test . . . is whether it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." ' " *Harvey,* 254 Wis. 2d 442, ¶ 44 (quoting *Neder,* 527 U.S. at 15–16, quoting in turn *Chapman,* 386 U.S. at 24). We also observed that in applying the *Chapman* test to the instructional error at issue in the case, the Supreme Court in *Neder* used "somewhat different language": " 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' " *Harvey,* 254 Wis. 2d 442, ¶ 46 (quoting *Neder,* 527 U.S. at 18).

¶ 37.   This difference in language, we said, did not constitute an abandonment of the *Chapman* test, but a clarification by the Court of "what it takes to meet the test; that is, that in order to conclude that an error 'did not contribute to the verdict' within the meaning of *Chapman,* a court must be able to conclude 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *Id.,* ¶ 48 n.14 (quoting *Neder,* 527 U.S. at 18). Ultimately, the Court in *Neder* held that "where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless." *Neder,* 527 U.S. at 17.

¶ 38.   Gordon argues that *Neder* is "completely irreconcilable" with the Supreme Court's more recent decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and suggests that "*Neder*'s force is suspect" by virtue of

the Court's decision in *Apprendi*.[9] The cases are not inconsistent, and *Apprendi* has not undermined *Neder*.

¶ 39. *Apprendi* did not involve instructional error, but, rather, was a facial challenge to that portion of the New Jersey hate crimes law that committed to the judge rather than the jury, by a mere preponderance of the evidence, the elements of the hate crimes penalty enhancer. *See Apprendi*, 530 U.S. 466, 468–69 (2000). In any event, federal and state appellate courts have had no difficulty reconciling the two cases. *Neder's* harmless error analysis has been applied to *Apprendi*-type errors in every single federal appellate circuit.[10] In addition, several state appellate courts have also applied *Neder* to

[9] We note that the *Neder* dissent (were it the law) would not help Gordon here, for it declared that reversal is appropriate only where a defendant has made a timely objection. *Neder*, 527 U.S. at 34–35 n.1 (Scalia, J., concurring in part and dissenting in part) ("[J]ust as the absolute right to trial by jury can be waived, so also the failure to object to its deprivation at the point where the deprivation can be remedied will preclude automatic reversal" because "[i]t is a universally acknowledged principle of law that one who sleeps on his rights—even fundamental rights— may lose them."). As we have noted, Gordon did not make a timely objection to the erroneous instruction.

[10] *See United States v. Bailey*, 270 F.3d 83 (1st Cir. 2001); *United States v. Joyner*, 313 F.3d 40 (2nd Cir. 2002); *United States v. Vazquez*, 271 F.3d 93 (3d Cir. 2002); *United States v. Stewart*, 256 F.3d 231 (4th Cir. 2001); *United States v. Matthews*, 312 F.3d 652 (5th Cir. 2002); *United States v. Zidell*, 323 F.3d 412 (6th Cir. 2003); *United States v. Nance*, 236 F.3d 820 (7th Cir. 2000); *United States v. Wheat*, 278 F.3d 722 (8th Cir. 2001); *United States v. Sanchez-Cervantes*, 282 F.3d 664 (9th Cir. 2002); *United States v. Prentiss*, 273 F.3d 1277 (10th Cir. 2001); *United States v. Candelario*, 240 F.3d 1300 (11th Cir. 2001); *United States v. Samuel*, 296 F.3d 1169 (D.C. Cir. 2002).

*Apprendi*-type errors.[11] Contrary to Gordon's argument, acceptance of *Neder,* and its application in the context of *Apprendi*-type errors, appears to be practically universal.[12]

¶ 40.   There is no meaningful way to distinguish the instructional error in *Harvey*—an instruction that contained a mandatory conclusive presumption—from an instruction that omits an element of the offense. *Neder* itself involved an instruction that erroneously omitted an element of the offense. *Neder,* 527 U.S. at 15. Both types of instructional error are reviewed under harmless error analysis, pursuant to *Neder* and *Harvey.* We overrule *Howard* and *Avila* to the extent that those cases established a rule of automatic reversal where a jury instruction omits an element of the offense. The holding in *Krueger* was based on *Howard* and *Avila; Krueger* is also overruled. Wisconsin harmless error law (including *Howard, Avila,* and, by implication, *Krueger*) has followed federal harmless error law. *Harvey*'s adoption of *Neder* and its reaffirmation of the *Chapman*-based harmless error analysis requires that we overrule the automatic reversal rule of *Krueger, Howard,* and *Avila.*

---

[11] *See State v. Ring,* 65 P.3d 915, 935 (Ariz. 2003); *State v. Garcia,* 28 P.3d 327, 331 (Ariz. Ct. App. 2001); *People v. Scott,* 111 Cal. Rptr. 2d 318, 328–29 (Cal. Ct. App. 2001); *State v. Price,* 767 A.2d 107, 113 (Conn. 2001); *State v. Davis,* 772 A.2d 559, 568 (Conn. 2001); *People v. Thurow,* 203 Ill.2d 352 (2003), 786 N.E.2d 1019; *State v. Burdick,* 782 A.2d 319, 328 (Me. 2001). *See also Bellamy v. United States,* 810 A.2d 401 (D.C. 2002).

[12] We are able to locate only one case finding structural error, *Esparza v. Mitchell,* 310 F.3d 414, 421 (6th Cir. 2002), a capital case involving a challenge under the Eighth Amendment rather than the Sixth Amendment.

¶ 41.  The removal of the automatic reversal rule returns this issue to the realm of *Strickland*'s prejudice analysis, because Gordon's attorney did not object to the omission of the *Peete* "nexus" instruction. We can confidently say that there is no reasonable probability of a different outcome had counsel alerted the circuit court to the missing *Peete* instruction.

¶ 42.  Gordon testified that he armed himself with two knives during a heated confrontation with the police that spilled out from Wilder's apartment into the surrounding neighborhood, all in order to escape arrest. Under these circumstances, Gordon's possession of the knives not only "facilitated" the disorderly conduct, it was what made his conduct disorderly in the first place. It is patently obvious, based on Gordon's own testimony, that the knives were not merely *possessed* in the commission of the underlying crime but were actually *used* to commit the underlying crime.

¶ 43.  In conclusion, we hold that the closing argument concession by Gordon's counsel was not the functional equivalent of a guilty plea on the disorderly conduct while armed count, but, rather, was a reasonable tactical decision under the circumstances of this case. The concession did not constitute deficient performance, and it was not prejudicial. Nor was the failure to object to the absence of a *Peete* nexus instruction prejudicial, because Gordon has not demonstrated a reasonable probability of a different result had the instruction been given.

*By the Court.*—The decision of the court of appeals is reversed.

¶ 44.  SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(dissenting).*  The defendant pled not guilty to

three counts and asked for a jury trial. During trial, defense counsel conceded the defendant's guilt to one of the counts—disorderly conduct while armed with a dangerous weapon—and failed to object to jury instructions that omitted an element of this crime.[1] The mere statement of these simple, undisputed facts illustrates the flaws in the majority decision.

¶ 45. The Constitution provides that the decision to plead guilty rests with the defendant alone. The due process clause of the Fourteenth Amendment protects against defense counsel's usurping that decision.[2] No trial can thus be considered constitutionally fair when an attorney overrides the accused's wishes to hold the government to its burden of proof beyond a reasonable doubt on each criminal charge.[3]

¶ 46. I would therefore affirm the decision of the court of appeals. I would conclude, as did the court of appeals, that a clear rule should be established that defense counsel may never concede guilt to any charged offense without the defendant's consent.[4] I would there-

---

[1] The circuit court found that defense counsel's remarks during closing argument amounted to a concession of the defendant's guilt. The court of appeals concluded that this finding was not clearly erroneous.

[2] *Brookhart v. Janis,* 384 U.S. 1, 9 (1966) (Harlan, J., concurring).

[3] *See Haynes v. Cain,* 298 F.3d 375, 387 (5th Cir. 2002) (Parker, J., dissenting).

[4] *See State v. Gordon,* 2002 WI App 53, ¶ 27, 250 Wis. 2d 702, 641 N.W.2d 183 ("[A] defense attorney may not admit his client's guilt, which is contrary to his client's plea of not guilty, unless the defendant unequivocally understands and consents to the admission."); *see also* Heidi H. Woessner, *Criminal Law—The Crucible of Adversarial Testing: Ineffective Assistance of Counsel and Unauthorized Concessions of Client's*

fore remand the cause to the circuit court, as did the court of appeals, for an evidentiary hearing to determine whether the defendant knowingly, voluntarily, and intelligently consented to defense counsel's concession of guilt.[5]

¶ 47. I would further hold, as did the court of appeals, that defense counsel's failure to object to the circuit court's omission in instructing the jury on the nexus element was prejudicial error. No trial can be considered constitutionally fair when a defendant who pleads not guilty is convicted without a finding of guilt beyond a reasonable doubt on each element of the crime charged. The burden of proving guilt beyond a reasonable doubt rests with the State and the determination of whether this burden has been met rests with the jury. A conviction following the complete failure to instruct a jury on an essential element of a crime violates the accused's constitutional rights to due process and a jury trial, and cannot stand.

---

*Guilt,* 24 W. New Eng. L. Rev. 315, 340 (2002) (a clear rule establishing that it is never reasonable for defense counsel to concede guilt or the absence of any reasonable doubt as to any charged offense without the defendant's consent is supported by existing notions of the collaborative nature of the attorney-client relationship and constitutional protections surrounding the entry of guilty pleas; a clear rule would reduce litigation).

[5] *See State v. Machner,* 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

If the defendant did not consent to defense counsel's concession of guilt, the court of appeals further directed the circuit court to give the State the opportunity to conduct a new trial solely on the charge of the proscribed "while armed" conduct or allow for resentencing without the enhancer. *Gordon,* 250 Wis. 2d 702, ¶ 39.

## I

¶ 48. This court must adopt a clear rule that defense counsel may not concede a defendant's guilt to a charged offense without the defendant's consent. As I will show, (A) the decision to plead guilty is a fundamental choice that belongs to the defendant alone, and because defense counsel's concession of guilt at trial operates as the functional equivalent of a guilty plea, the defendant's consent to the concession is necessary; (B) the majority's attempts to distinguish the concession of guilt in the present case from concessions of guilt that serve as the functional equivalent of a guilty plea do not withstand scrutiny; and (C) properly understood, this case is not about ineffective assistance of counsel, but rather, the due process violation that occurs when defense counsel usurps the right of a defendant to plead guilty personally.

## A

¶ 49. The decision to plead guilty is one of the fundamental choices that remain squarely in the hands of the defendant at all times.[6] In *Jones v. Barnes,* 463 U.S. 745, 751 (1983), the United States Supreme Court recognized that an accused has the ultimate authority to make certain fundamental decisions regarding his case, including the decision to plead guilty. Moreover, in

---

[6] *Jones v. Barnes,* 463 U.S. 745, 751 (1983); *Wainwright v. Sykes,* 433 U.S. 72, 93 n.1 (1977) (Burger, C.J., concurring); *Faretta v. California,* 422 U.S. 806, 834 (1975). *See also* 3 Wayne R. LaFave et al., *Criminal Procedure* § 11.6(a) at 598 (2d ed. 1999) ("The Supreme Court has stated, in dictum or holding, that it is for the defendant to decide whether to take each of the following steps: plead guilty or take action tantamount to entering a guilty plea . . . .").

*State v. Albright,* 96 Wis. 2d 122, 129–30, 291 N.W.2d 487 (1980), this court explained, "[C]ertain constitutional rights of a criminal defendant are so fundamental that they are deemed to be personal rights which must be waived personally by the defendant. In this category of personal rights is found the decision whether to plead guilty."[7]

¶ 50. An accused's right to make these fundamental decisions personally is not abolished, diminished, or otherwise affected by an accused's constitutional right to counsel. In *Faretta v. California,* 422 U.S. 806, 834 (1975), the Supreme Court explained that the right to counsel is predicated on respect for the individual's liberty to make his own choices as to his defense, because ultimately, it is the individual himself who must bear the consequences of those choices. "[T]he function of counsel under the Sixth Amendment is to protect the dignity and autonomy of a person on trial by *assisting* him in making choices that are his to make, not to make choices for him . . . ."[8]

¶ 51. The decision to concede guilt in statements that amount to the functional equivalent of a guilty plea, therefore, must be made by the accused personally.[9] Regardless of the strategic wisdom of conceding

---

[7] *See also State v. Burns,* 226 Wis. 2d 762, 771, 594 N.W.2d 799 (1999); SCR 20:1.2(a) ("In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.").

[8] *Jones v. Barnes,* 463 U.S. at 759 (1983) (Brennan, J., dissenting).

[9] *See, e.g., Francis v. Spraggins,* 720 F.2d 1190 (11th Cir. 1983) (counsel may not concede guilt without client's consent to maintain credibility for the sentencing phase); *Cox v. Hutto,* 589

guilt, a defense attorney may not concede his client's guilt without the client's consent; an accused's constitutional right to plead guilty personally cannot be stripped away in the name of trial strategy. Under the Constitution, an accused's right to plead guilty personally trumps a defense attorney's ability to determine trial strategy.

¶ 52.    The majority does not deny that the decision to plead guilty is a fundamental choice that remains squarely in the hands of the defendant, not of his counsel. The majority even acknowledges that defense counsel in this case conceded guilt to the charge of

F.2d 394, 395, 396 (8th Cir. 1979) (a defense attorney's stipulating to an accused's prior convictions at a jury trial on a habitual offender charge amounts to a waiver of the accused's right to have the State prove the prior offenses and the accused's right to rebut the State's evidence and cannot be accepted without consent of the defendant); *People v. Hattery,* 488 N.E.2d 513 (Ill. 1986) (counsel may not concede client's guilt without client's consent in the hope of obtaining a more lenient sentence where a plea of not guilty has been entered); *State v. Carter,* 14 P.3d 1138 (Kan. 2000) (counsel's concession of defendant's guilt to a robbery charge is equivalent to entering a guilty plea and cannot be made over defendant's objection); *State v. Moore,* 458 N.W.2d 90 (Minn. 1990) (new trial ordered when the defense attorney's concession amounted to an admission that the accused "was guilty of heat-of-passion manslaughter" without the consent or acquiescence of the accused); *State v. Wiplinger,* 343 N.W.2d 858, 860, 861 (Minn. 1984) (a defense attorney who indirectly admits an accused's guilt by asking questions of witnesses that imply that one of two crimes charged was, in fact, committed by the accused, admits guilt rising to the level of a guilty plea and requires a client's consent); *Jones v. State,* 877 P.2d 1052, 1057 (Nev. 1994) (new trial was ordered when counsel conceded guilt during the guilt/innocence phase of the trial without client's consent).

disorderly conduct while armed.[10] The majority, however, rejects the defendant's claim that the concession of guilt amounted to the functional equivalent of a guilty plea. According to the majority, the concession of guilt here was merely a "reasonable tactical approach"[11] and therefore the defendant's consent was unnecessary.[12]

¶ 53.   Defense counsel need not utter the words "the accused pleads guilty" and then cease to participate further in the trial in order for his words or actions to serve as the "functional equivalent of a guilty plea." Rather, words or actions by defense counsel amount to the functional equivalent of a guilty plea when they effectively undermine those rights that are asserted when a defendant pleads not guilty and elects to be tried before a jury.[13]

¶ 54.   When the defendant here pled not guilty, he exercised his right to make a statement in open court

---

[10] Majority op., ¶ 26.

[11] *Id.*

[12] The Wisconsin Rules of Professional Conduct make it clear that even those strategic or tactical decisions that are within the province of an attorney are to be made after consultation with the client. *See* SCR 20:1.2 (a lawyer shall abide by a client's decisions concerning the objectives of representation and shall consult with the client as to the means by which they are pursued); SCR 20:1.4(b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation).

[13] *See, e.g., Brookhart,* 384 U.S. at 7 (1966) (defense counsel's decision to agree to a prima facie trial, in which the State's burden of proof is lowered and the defense is not allowed to present evidence or cross-examine witnesses, held to be the functional equivalent of a guilty plea); *Wiley v. Sowders,* 647 F.2d 642, 649–50 (6th Cir. 1981) (counsel's admission of guilt in closing argument constituted a surrender of the sword and cannot be overlooked as trial strategy).

that he intended to hold the State to the strict standard of proof beyond a reasonable doubt as to each of the offenses charged.[14] Moreover, when the defendant pled not guilty and also asserted his right to a jury trial, he exercised his right to have a unanimous jury verdict of guilt beyond a reasonable doubt on each of the offenses charged.[15]

¶ 55.    Despite the defendant's not guilty plea in the present case, defense counsel said to the jury, "[T]here is no doubt, there is no question" that at the moment the defendant was shot his conduct provided sufficient grounds to arrest him for disorderly conduct while armed. Defense counsel continued: "Obviously, running around the neighborhood with two knives is disorderly conduct and it is disorderly conduct while armed." Moreover, defense counsel concluded his closing argument at trial, in which his client was charged with three crimes, by stating, "I'm asking you folks to acquit [the defendant] on the first and the third charges. Thank you." The charge on which defense counsel did not ask for an acquittal was disorderly conduct while armed.

¶ 56.    Defense counsel, by stating that the defendant was, in fact, running around the neighborhood with knives and that his actions "obviously" constituted disorderly conduct while armed, essentially told the jurors that he was agreeing with the State that the defendant was guilty of the crime charged. Moreover, defense counsel drove the point home when he re-

----

[14] *Nixon v. Singletary,* 758 So. 2d 618, 623 (Fla. 2000) (citing *Byrd v. United States,* 342 F.2d 939, 941 (D.C. Cir. 1965)).

[15] *State v. Lomagro,* 113 Wis. 2d 582, 588–89, 335 N.W.2d 583 (1983).

quested that the jury acquit the defendant on two charges, but not on the charge of disorderly conduct.

¶ 57. The only logical conclusion that can be drawn from this concession is that it served as the functional equivalent of a guilty plea. Defense counsel's concession of guilt toppled the defendant's plea of not guilty.[16] Defense counsel folded up the tents and waved the white flag to the disorderly conduct while armed charge, signaling to the jury that the State had met its burden of proof and the defendant was in fact guilty. Defense counsel's complete concession of the defendant's guilt thereby compromised the adversarial process and nullified the defendant's right to a jury trial,[17] eradicating the State's burden to prove guilt beyond a reasonable doubt on the disorderly conduct while armed charge.[18] The effect of the concession was substantially the same as the effect of a guilty plea would have been. Indeed, at the State's closing rebuttal argument, after the concession was made, the State

---

[16] *See Wiley,* 647 F.2d at 650 ("Unquestionably, the constitutional right of a criminal defendant to plead 'not guilty,' or perhaps more accurately not to plead guilty, entails the obligation of his attorney to structure the trial of the case around his client's plea.").

[17] *Wiley,* 647 F.2d at 650.

[18] *See United States v. Cronic,* 466 U.S. 648, 656 (1984) ("The right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing . . . [I]f the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated."); *see also Nixon,* 758 So. 2d at 623 (an attorney's statement amounted to the functional equivalent of a guilty plea because it removed the strict burden on the State to prove the accused's guilt beyond a reasonable doubt).

made no mention of the disorderly conduct charge and focused only on the other two charges.

### B

¶ 58. The majority concludes, in a single paragraph, that the concession in this case did not amount to the functional equivalent of a guilty plea because it did not serve to waive any of the rights that are sacrificed by a typical guilty plea. According to the majority, the concession of guilt had no effect on the defendant's right to a jury trial, his right to cross-examine the State's witnesses, his right to testify in his own defense, and his right to have a unanimous jury verdict of guilt beyond a reasonable doubt.[19]

¶ 59. The majority is simply wrong in its conclusion. A defendant cannot be considered to have exercised these rights when defense counsel concedes the defendant's guilt.

¶ 60. The defendant's not guilty plea entitled the defendant to have the issue of his guilt presented to the jury as an adversarial issue in which the State bears the burden of proving guilt beyond a reasonable doubt.[20] Without an adversarial process in which guilt is actually contested, the role of the jury is perfunctory; deliberations become a charade. There is simply no way to know in this case whether the jury's determination of guilt beyond a reasonable doubt resulted from the

---

[19] Majority op., ¶ 24.

[20] *See Nixon,* 758 So. 2d at 625 ("In every criminal case, a defense attorney can, at the very least, hold the State to its burden of proof by clearly articulating to the jury or fact-finder that the State must establish each element of the crime charged and that a conviction can only be based upon proof beyond a reasonable doubt.").

weight of the evidence presented or from the concession itself.[21] It seems safe to conclude, however, that regardless of the evidence, no rational jury would reach a not guilty verdict when both parties agree that the defendant is guilty. If a defendant cannot convince his own attorney to argue his innocence at trial, there is virtually no likelihood that a jury would find him not guilty. The concession of guilt rendered the unanimous verdict of guilt to the charge of disorderly conduct while armed a foregone conclusion.

¶ 61. The majority further concludes that the concession in this case does not amount to the functional equivalent of a guilty plea because (1) it was made with regard to only one of three charges the defendant faced, not all of the charges; (2) the concession was made during closing argument after adversarial testing of the evidence, not during opening argument; (3) the defendant did not contemporaneously object to the concession; and (4) the defendant's testimony did not conflict with the concession.[22] In at least one of these four ways, asserts the majority, this case is different from other cases in which a defense counsel's concession of guilt was held to amount to the functional equivalent of a guilty plea.[23]

---

[21] *See Connecticut v. Johnson*, 460 U.S. 73, 85 (1983)("An erroneous presumption on a disputed element of the crime renders irrelevant the evidence on the issue because the jury may have relied upon the presumption rather than upon evidence.").

[22] Majority op., ¶ 27.

[23] *Id. But see United States v. Simone*, 931 F.2d 1186, 1197 (7th Cir. 1991), in which the court stated:

> We do not approve of a defense counsel's deliberate, explicit admission that a jury should find his client guilty of a charge in the absence of any suggestion that the defendant concurred in the

¶ 62. These reasons, however, do not withstand scrutiny. First, the fact that defense counsel conceded guilt to only one of many charges is irrelevant. The Constitution does not grant an accused the right to plead guilty only to all or none of the charges he or she faces. Rather, the right to plead is personal to the accused as to each charge. Defense counsel, in this case, admitted guilt on one criminal charge. The State was thus not put to its burden of proof with respect to that charge as the defendant's plea of not guilty required.

¶ 63. Second, the fact that defense counsel conceded guilt during closing argument and not opening argument is also irrelevant. The Constitution does not restrict when an accused may plead guilty. An accused does not lose his "ultimate authority" over the decision to plead guilty simply because a jury has been impaneled.

¶ 64. The majority might be suggesting that a concession during closing argument is different than a concession during opening argument because the defendant has exercised some of his trial rights, such as the right to cross-examine witnesses, call witnesses on his own behalf, and if he so chooses, testify in his own defense. The ability to exercise some rights, however, does not make up for the fact that other rights were violated. The fact remains that the effect of the conces-

---

decision to proceed in such a manner. However, in the case before us, [the defendant's] attorney intentionally stipulated facts and conceded those charges for which there was unrefutable evidence and no mandatory sentences, but forcefully argued [the defendant's] innocence on the charges with heavier penalties, as part of a trial strategy. It was a reasonable plan that was evident from the beginning of the trial. At no time did the defendant object to it; in fact, we believe he chose or at least condoned the tactics. Our position was reinforced by [the defendant's] post-trial letter to the sentencing judge which provided ample evidence of his approval of the strategy.

414

sion at either time is to take away the defendant's right to a jury trial, whereby his guilt is decided through an adversarial process in which the State bears the burden of proof beyond a reasonable doubt, and his right to a unanimous jury verdict.

¶ 65.   In making the distinction between a concession of guilt to all charges as opposed to only one of many charges and between a concession of guilt during opening argument as opposed to closing argument, the majority mistakes reasons why it may be strategically wise to concede guilt for reasons why a concession of guilt should not be considered the functional equivalent of a guilty plea. It might make very good tactical sense to concede guilt to the least serious of many charges in order to maintain credibility with the jury and enhance the prospects of acquittal on the more serious charges, and it might make even better sense to wait to concede guilt until all of the evidence has been presented and challenged before deciding whether it appears overwhelming. That a concession would be strategically wise, however, does not make it a "tactical" decision that may be made without the defendant's consent.[24]

¶ 66.   It may be strategically wise to plead guilty following a preliminary hearing at which the State produces an airtight confession and corroborating physical evidence, but it still remains the decision of the accused alone whether to go to trial. The right to make that decision does not disappear just because the State

---

[24] *See Cronic,* 466 U.S. at 656 n.19 ("If there is no bona fide defense to the charge, counsel may disserve the interests of his client by attempting a useless charade. At the same time, even when no theory of defense is available, if the decision to stand trial has been made, counsel must hold the prosecution to its heavy burden of proof beyond a reasonable doubt.") (citations omitted).

successfully introduces that confession and physical evidence during trial and defense counsel realizes that there is no legitimate defense to be made.

¶ 67. The other two distinctions drawn by the majority are also irrelevant. The fact that the defendant did not object to the concession and that the defendant's testimony comported with the concession address only whether the defendant consented to defense counsel's concession, not whether the concession amounts to the functional equivalent of a guilty plea. Moreover, an accused's consent cannot be inferred from his failure to object to counsel's concession of guilt or from his own testimony.

¶ 68. The defendant's failure to stand up at trial and object to defense counsel's closing argument is insufficient to constitute consent to defense counsel's conduct. Courts must "indulge every reasonable presumption against waiver of fundamental constitutional rights" and should not "presume acquiescence in the loss" of those rights.[25] The Constitution requires that there must be an affirmative showing, or an "allegation and evidence which shows," that a guilty plea was knowingly, voluntarily, and intelligently made.[26] Thus, a silent record cannot form the basis upon which we determine whether a guilty plea is knowingly, voluntarily, and intelligently made.[27]

---

[25] *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938) (citations omitted).

[26] *State v. Bangert,* 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986) (citing *Boykin v. Alabama,* 395 U.S. 238, 242 (1969)).

[27] *See, e.g., Boykin,* 395 U.S. at 242–43 (extending *Carnley v. Cochran,* 369 U.S. 506, 516 (1962), to hold that a silent record is insufficient to determine whether a guilty plea is knowingly and voluntarily made); *State v. Armstrong,* 223 Wis. 2d 331, 348, 588 N.W.2d 606 (1999) ("This court has always set high standards of

416

¶ 69.  Similarly, the defendant's testimony stating facts that support a finding of disorderly conduct while armed does not amount to consent to defense counsel's concession of guilt. The defendant told his story after pleading not guilty. He never changed his plea, and it is absurd to conclude that factual admissions made under cross-examination by the prosecutor amounted to a change of plea. The Constitution does not permit a directed verdict of guilty, even when the prosecution's evidence is uncontradicted or the evidence is overwhelming, since to do so improperly invades the province of the jury.[28] Therefore, the Constitution cannot consider a defendant to have waived his right to a jury trial and his right to a unanimous verdict of guilt beyond a reasonable doubt simply by testifying to facts that support a finding of guilt.

## C

¶ 70.  Because the majority erroneously characterizes the concession of guilt as a mere tactical decision left to defense counsel, not the defendant, it subjects defense counsel's actions to the test for ineffective assistance of counsel announced in *Strickland v. Wash-*

---

proof for the waiver of constitutional rights, . . . "); *State v. Albright*, 96 Wis. 2d 122, 291 N.W.2d 487 (1980) (Abrahamson, J., dissenting) (waiver should not be presumed from silence as it is unrealistic to expect a defendant to stand and openly oppose counsel over decision on whether to testify).

[28] *See Edwards v. United States*, 286 F.2d 681, 683 (5th Cir. 1960) ("No matter how conclusive the evidence, a court may not direct a verdict of guilt."); *see also State v. Harvey*, 2002 WI 93, ¶ 20, 254 Wis. 2d 442, 647 N.W.2d 189 ("[A] judge 'may not direct a verdict for the State, no matter how overwhelming the evidence.' ") (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 277 (1993)).

*ington,* 466 U.S. 668 (1984). The majority concludes that the tactical decision was reasonable in light of the defendant's own testimony and therefore did not constitute deficient performance. Moreover, writes the majority, even if the attorney's performance was deficient, the defendant suffered no prejudice since there was "no way in the world that the jury was going to acquit" on the disorderly conduct while armed count.[29]

¶ 71.  Questions of deficient performance, however, are irrelevant to our inquiry. "*Strickland* does not provide the appropriate framework for analyzing this case. . . . [T]his case raises a much broader concern that goes to the very core of what the Sixth Amendment means and asks us to address important questions involving due process and the right to a fair trial."[30]

¶ 72.  A defense attorney's concession of guilt to one of many charges may be the smartest, best, and most effective trial strategy possible, and the defense attorney's performance, in that sense, may not be deficient.[31] Yet the question presented in this case is one

---

[29] Majority op., ¶ 30. Of course, "no way the jury would acquit" is not the standard to be applied. As the majority opinion explains, the test is whether the "result is reliable," majority op., ¶ 22 (quoting *Strickland v. Washington,* 466 U.S. 668, 687 (1984)), that is, whether the attorney's deficient performance "undermine[s] confidence in the outcome." Majority op., ¶ 23 (quoting *Williams v. Taylor,* 529 U.S. 362, 390–91). The test is not simply whether an appellate court weighing the evidence in hindsight determines that the jury would have convicted the defendant regardless of the error.

[30] *Haynes,* 298 F.3d at 385 (Parker, J., dissenting).

[31] *See, e.g., Haynes,* 298 F.3d at 387 (Parker, J., dissenting) ("Trial counsel's decision to concede Haynes' guilt on the second degree murder charge was probably a wise move. However, this point is absolutely irrelevant to the issue before us. The

of due process and fair trial: Who has the right to decide whether to concede guilt and effectively remove the State's burden to convince a jury to unanimously find guilt beyond a reasonable doubt, the accused or the accused's lawyer?

¶ 73. When the question is presented in this way, stripped down to its essentials and basics, the answer is well-settled constitutional law. As we explained previously and as the majority opinion concedes, the due process clause guarantees that only an accused, not defense counsel, has the right to enter a guilty plea.[32] Only an accused has the right to decide whether to make concessions in open court that amount to the functional equivalent of a guilty plea. And if the defense attorney does so without the accused's consent, the conviction must be vacated for a violation of due process.

¶ 74. The Constitution does not forbid a defense attorney from strategically conceding guilt to a charge at trial. The Constitution does require, however, that a defense attorney obtain the consent of his client before conceding guilt in terms that amount to the functional equivalent of a guilty plea.

---

Constitution mandates that the decision to concede guilt on a lesser charge must be made by the accused, not his attorney, regardless of how difficult it may be for the attorney to mount a defense on all charges.").

[32] *Nixon,* 758 So. 2d at 625 ("Although the attorney can make some tactical decisions, the ultimate choice as to which direction to sail is left up to the defendant. The question is not whether the route taken was correct; rather, the question is whether [the defendant] approved of the course.").

## II

¶ 75. The defendant in the present case was not once, but twice denied his right to a constitutionally fair trial on the charge of disorderly conduct while armed. As the majority explains, when an accused is alleged to have possessed a dangerous weapon in the commission of a crime for purposes of the "while armed" penalty enhancer, the circuit court is required to give a *Peete* nexus instruction, instructing the jury that it must find that the dangerous weapon facilitated the underling crime.[33] In the present case, however, after defense counsel conceded the defendant's guilt to disorderly conduct while armed, the circuit court failed to give the *Peete* nexus instruction for the State's charge of disorderly conduct while armed and defense counsel did not object.

¶ 76. It is clear that an accused's constitutional rights are violated if a jury has not been instructed on every element of an offense.[34] The Due Process Clause demands that no criminal defendant be convicted at trial except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.[35] The burden of proving each and every element rests on the State; the determination as to whether this burden has been met as to each and

---

[33] Majority op., ¶ 31.

[34] *State v. Tomlinson,* 2002 WI 91, ¶¶ 56–57, 254 Wis. 2d 502, 648 N.W.2d 367; *Harvey,* 254 Wis. 2d 442, ¶¶ 18–23, 29; *State v. Perkins,* 2001 WI 46, ¶ 40, 243 Wis. 2d 141, 626 N.W.2d 762; *State v. Howard,* 211 Wis. 2d 269, ¶ 47, 564 N.W.2d 753 (1997); *State v. Avila,* 192 Wis. 2d 870, ¶ 9, 532 N.W.2d 423 (1995).

[35] *Howard,* 211 Wis. 2d 269, ¶ 45 (citing *In re Winship,* 397 U.S. 358, 364 (1970)).

every element rests with the jury. Therefore, a "proper jury instruction is a crucial component of the fact-finding process."[36]

¶ 77. It is also clear under Wisconsin law that harmless error analysis does not apply to an erroneous jury instruction that omits an element of the offense. This court has consistently held that a circuit court's failure to instruct a jury on an essential element of a crime is fundamentally unfair and cannot be harmless error. *See State v. Perkins,* 2001 WI 46, 243 Wis. 2d 141, 626 N.W.2d 762, *State v. Howard,* 211 Wis. 2d 269, 564 N.W.2d 753 (1997), and *State v. Avila,* 192 Wis. 2d 870, 532 N.W.2d 423 (1995).[37]

¶ 78. The majority acknowledges that the jury instruction in the present case was error.[38] The majority overrules clear Wisconsin precedent, however, and concludes that the failure to instruct the jury on an essential element of the crime is subject to harmless

---

[36] *Id.,* ¶ 46 (citing *State v. Schultz,* 102 Wis. 2d 423, 426, 307 N.W.2d 151 (1981)).

[37] *Perkins,* 243 Wis. 2d 141, ¶ 53 (Wilcox, J., concurring, joined by Crooks, J.) ("[W]here jury instructions are devoid of explanation regarding an element of an alleged offense, the instructions effectively preclude the jury from rendering a verdict on that element. In such circumstances, there can be no jury verdict on that particular element and, therefore, harmless error analysis—which analyzes cases in terms of the jury verdict—is inapplicable."); *Howard,* 211 Wis. 2d 269, ¶ 51 (follows *Avila* in holding that when a court fails to instruct a jury on an essential element of a crime there is an automatic reversal of the verdict); *Avila,* 192 Wis. 2d at 893A (concludes that "[w]hen a jury does not make a finding of guilty beyond a reasonable doubt on an element of the crime, a court cannot conclude that a deficient jury instruction with regard to that element is harmless error").

[38] Majority op., ¶ 32.

error review.[39] According to the majority, this court's decisions in *Howard* and *Avila* "cannot survive our decision last term in *Harvey*."[40]

¶ 79. In *Harvey,* as the majority points out, this court applied harmless error review to a particular type of instructional error in which the jury instruction improperly operated as a mandatory conclusive presumption on an element of a penalty enhancer. Yet the majority concludes that *Harvey* nonetheless governs this case as well since there is "no meaningful way" to distinguish an instruction that erroneously includes a mandatory conclusive presumption from an instruction that erroneously omits an element of the offense.[41]

¶ 80. I disagree that there is no meaningful distinction between the instructional error at issue in *Harvey* and the instructional error at issue in the present case. *Harvey,* its companion case, *State v. Tomlinson,* 2002 WI 91, 254 Wis. 2d 502, 648 N.W.2d 367, and the federal case on which it relied, *Neder v. United States,* 527 U.S. 1 (1999), all involved fact patterns in which the trial court found for itself an element of the crime, erroneously taking the element away from the jury. In the present case, by contrast, the jury received

---

[39] *Id.,* ¶ 34. When discussing the harmless error standard, the majority simply repeats verbatim its discussion in *Harvey* without taking into account the nuances of that standard that have been expressed in recent opinions of this court. *See, e.g., State v. Vanmanivong,* 2003 WI 41, ¶¶ 41–49, 261 Wis. 2d 202, 661 N.W.2d 76; *State v. Carlson,* 2003 WI 40, ¶¶ 85–87, 261 Wis. 2d 97, 661 N.W.2d 51 (Sykes, J., dissenting); *id.,* ¶ 51 n.1 (Abrahamson, C.J., concurring).

[40] Majority op., ¶ 34 (referring to *Harvey,* 254 Wis. 2d 442). The majority also overturns, without admitting as much, *Perkins,* 243 Wis. 2d 141.

[41] Majority op., ¶ 40.

no instruction whatsoever on an essential element of the crime, and the circuit court made no finding on the element either.

¶ 81.   In *Neder,* the accused was charged with violating federal criminal statutes penalizing fraud. Among the elements of the crimes with which he was charged was that any false statements made had to be material to the perpetration of fraud. Instead of instructing the jury on materiality, the trial court told the jurors that the question of materiality was not a question for the jury to decide.[42] The trial court explained to the jury that "it 'need not consider' the materiality of any false statements 'even though that language is used in the indictment.' "[43] The *Neder* jury was aware that materiality was necessary for a finding of guilt. The jury simply was led to believe that the trial court would make the finding at a subsequent stage of the trial.[44]

¶ 82.   In both *Harvey* and *Tomlinson,* the circuit court improperly told the jurors that one of the elements of the crime had already been decided for them and then offered that element to the jury for inclusion in its deliberations as a mandatory conclusive presumption. As in *Neder,* the jurors knew about the element

---

[42] *Neder v. United States,* 527 U.S. 1, 6 (1999).

[43] *Id.*

[44] The trial court did ultimately make that finding. *Neder,* 527 U.S. at 6 ("The court . . . subsequently found, outside the presence of the jury, that the evidence established the materiality of all the false statements at issue.").

The conclusions of law made in *Neder* are, at times, stated more broadly than its facts. For example, despite addressing an instruction that took an element away from the jury, the *Neder* decision states that the "conclusion that the omission of an element is subject to harmless-error analysis is consistent with" prior case law. *Neder,* 527 U.S. at 10.

and knew that the trial court had, in effect, made a finding that the evidence satisfied the element.

¶ 83. By contrast, in the case at hand, no instruction on the nexus element was given at all, and neither the court nor the jury was ever expressly asked to decide the nexus element. The jurors remained unaware throughout their deliberations that for the defendant to be convicted of disorderly conduct while armed, the knives must have facilitated his disorderly conduct. The defendant in the present case was convicted of the "dangerous weapon" penalty enhancer without any finding by either a court or a jury that each of the elements of that crime was proven beyond a reasonable doubt.

¶ 84. Wisconsin harmless error law clearly distinguishes between an erroneous instruction, as in *Neder, Harvey,* and *Tomlinson,* and an instruction that omits an essential element, as in *Avila, Howard,* and *Perkins.* Harmless error analysis applies to an erroneous instruction but does not apply to the complete absence of an essential instruction. The *Howard* court explained:

> [I]f the circuit court fails to instruct a jury about an essential element of the crime and the jury must find that element beyond a reasonable doubt, there is an automatic reversal of the verdict. If, however, there is some instruction on that element, albeit erroneous, and the jury is told that the element must be proven beyond a reasonable doubt, then the analysis is one of harmless error.[45]

¶ 85. In short, *Harvey* does not demand that we overturn well-established Wisconsin law. Moreover, the majority does not offer any other reason for overturn-

[45] *Howard,* 211 Wis. 2d 269, ¶ 51 (citing *Avila,* 192 Wis. 2d at 893A).

ing *Avila, Howard,* and *Perkins.* This court does not overturn precedent unless there is strong justification, namely when precedent has become detrimental to coherence and consistency in the law.[46] *Avila, Howard,* and *Perkins* have served Wisconsin well and remain coherent and consistent with the Constitution. As Justice Wilcox explained in *Perkins,* if a court were to uphold a conviction when the jury was not instructed on an essential element of the charge, it would "in effect" be "upholding a directed verdict in favor of the State" and "to do so would violate [the accused's] constitutional rights to due process and a jury trial . . . a result [that] is strictly forbidden."[47]

¶ 86.   For the reasons set forth, I dissent.

¶ 87.   I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent.

---

[46] *State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, ¶ 29, 244 Wis. 2d 613, 628 N.W.2d 376 (internal citations omitted).

[47] *Perkins,* 243 Wis. 2d 141, ¶ 58.