REBECCA FRANK DALLET, J. (concurring).
*201 ¶69 I agree with the majority opinion that the two law review articles cited by Trammell do not provide the overwhelming evidence necessary to conclude that Wis JI-Criminal 140 (2017) unconstitutionally reduces the State's burden of proof below the reasonable doubt standard or to warrant discretionary reversal. Notwithstanding, I write separately for two reasons: First, to respond to the majority opinion's denigration of this court's holding in State v. Dubose, 2005 WI 126, 285 Wis. 2d 143, 699 N.W.2d 582 ; and second, to encourage the Wisconsin Criminal Jury Instructions Committee to revise Wis JI-Criminal 140 in the interest of justice in light of the arguments made in the amicus curiae brief of the Wisconsin State Public Defender.
¶70 In Dubose, we recognized extensive social science studies over a ten-year period demonstrating the unreliability of eyewitness testimony and, based upon that overwhelming evidence, we adopted new standards for the admissibility of out-of-court identification procedures. Id., ¶¶29-33. Dubose stands for the principle that prior decisions of this court may become unsound when they are based upon principles that are no longer valid. See id., ¶¶31-33. Dubose further upholds this court's right to interpret the Wisconsin Constitution to provide greater protections than the United States Constitution. Id., ¶41.
¶71 Although the majority opinion acknowledges that the Dubose court considered several studies, it minimizes the impact of the studies when it summarily concludes that the court's holding was instead based upon the Wisconsin Constitution. Majority op., ¶33. The majority opinion seemingly calls into question this court's ability to consider social science *202 evidence in constitutional cases. While I agree that two law review articles alone do not provide the type of extensive new research like the studies we relied upon in Dubose, the Dubose case was "not the first to result in a change in principles based on extensive new studies completed after a court decision that was premised on constitutional interpretation and application." Dubose, 285 Wis. 2d 143, ¶43, 699 N.W.2d 582. For example, in Brown v. Board of Education, 347 U.S. 483, 494 & n.11, 74 S.Ct. 686, 98 L.Ed. 873 (1954), the United States Supreme Court overturned the "separate but equal" doctrine and provided an important shift in constitutional law based on recent studies that demonstrated the negative effects of segregation in public education. The United States Supreme Court stated: "We must consider public education in light of its full development and its present place in American life throughout the Nation." Id. at 492-93, 74 S.Ct. 686. In addition to desegregation of schools, other examples of cases where social science research has formed the basis for the United States Supreme Court to abrogate previous decisions include: the regulation of women's working hours in *587 Muller v. State of Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908) ; criminalization of consensual same sex intimate conduct in Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003) ; and imposition of the death penalty on the mentally ill and juveniles in Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), and Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). The majority opinion cannot possibly be suggesting that this court can no longer be informed by current research that measures the effects of previous court decisions on an evolving society.
¶72 In its effort to limit Dubose, the majority also challenges our ability to interpret the Wisconsin Constitution more broadly than the United States Constitution. This court has stated:
*203 This court ... will not be bound by the minimums which are imposed by the Supreme Court of the United States if it is the judgment of this court that the Constitution of Wisconsin and the laws of this state require that greater protection of citizens' liberties ought to be afforded ....
State v. Doe, 78 Wis. 2d 161, 172, 254 N.W.2d 210 (1977).
¶73 In Dubose, 285 Wis. 2d 143, ¶41, 699 N.W.2d 582, we emphasized that even though Article I, Section 8 includes language similar to that of the Due Process Clause of the United States Constitution, "we retain the right to interpret our constitution to provide greater protections than its federal counterpart." We clarified in State v. Luedtke, 2015 WI 42, ¶50, 362 Wis. 2d 1, 863 N.W.2d 592, that the Due Process Clause of the Wisconsin Constitution provides greater protection in one identification procedure, the showup. This court does not forfeit to the federal judiciary its power to interpret our constitution. See State v. Knapp, 2005 WI 127, ¶60, 285 Wis. 2d 86, 700 N.W.2d 899 ("While textual similarity or identity is important when determining when to depart from federal constitutional jurisprudence, it cannot be conclusive .... The people of this state shaped our constitution, and it is our solemn responsibility to interpret it.") The Dubose case remains an example of this court's ability to consider social science evidence in constitutional cases and to interpret our constitution more broadly than its federal counterpart.
¶74 Although I agree that there is currently insufficient evidence that Wis JI-Criminal 140 unconstitutionally reduces the State's burden of proof below the "beyond a reasonable doubt" standard, I nonetheless respectfully request that the Wisconsin Criminal *204 Jury Instructions Committee review the instruction again in the interest of justice in light of the arguments made in the amicus curiae brief of the Wisconsin State Public Defender. I believe that the combination of two deficiencies in the instruction could potentially dilute the burden of proof in Wis JI-Criminal 140 and thus warrants further consideration.
¶75 First, Wis JI-Criminal 140 fails to define "beyond a reasonable doubt."[1] The United States Supreme Court has described the standard of proof of "beyond a reasonable doubt" as "a subjective state of near certitude of the guilt of the accused" that symbolizes the significance our society attaches to liberty.
*588 Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; see also In re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (declaring proof beyond a reasonable doubt to be equivalent to proof to an "utmost certainty"). While the United States Supreme Court has declined to require specific language to describe this burden of proof, we may look to other states for guidance.
¶76 Some states convey the requisite level of proof by instructing jurors that they must be "firmly convinced" of the defendant's guilt. See, e.g., Revised Arizona JI-Criminal 20 ("Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt."); Delaware Pattern Criminal Jury Instructions § 2.6 ("proof that leaves you firmly convinced of the defendant's guilt"); Indiana *205 Criminal Pattern Jury Instruction No. 1.1500 ("Reasonable doubt exists when you are not firmly convinced of the Defendant's guilt ..."); 17 La. Civ. L. Treatise, Criminal Jury Instructions § 3.3 ("Reasonable doubt ... is present when, after you have carefully considered all the evidence, you cannot say that you are firmly convinced of the truth of the charge."); New Jersey Model Criminal Jury Charges Non 2C Charges ("proof ... that leaves you firmly convinced of the defendant's guilt"); North Carolina Pattern Jury Instructions § 101.10 ("proof that fully satisfies or entirely convinces you of the defendant's guilt"); 2 CR Ohio Jury Instructions § 405.07 (" 'Reasonable doubt' is present when the jurors ... cannot say they are firmly convinced of the truth of the charge."); Model Utah Jury Instructions, Second Edition CR103 ("Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt.").
¶77 Other states have described the level of certainty required as "an abiding conviction" of guilt or a "moral certainty." See 1-1 Arkansas Model Jury Instructions-Criminal AMCI 2d 110 ("A juror is satisfied beyond a reasonable doubt if after an impartial consideration of all the evidence he has an abiding conviction of the truth of the charge."); Judicial Council of California Criminal Jury Instructions No. 103 ("proof that leaves you with an abiding conviction that the charge is true"); Florida Standard Jury Instructions § 3.7 ("if, after carefully considering, comparing and weighing all the evidence, there is not an abiding conviction of guilt, or, if, having a conviction, it is one which is not stable but one which wavers and vacillates, then the charge is not proved beyond every reasonable doubt"); Massachusetts Criminal Jury Instructions No. 2.180 ("you have in your minds an abiding conviction, to *206 a moral certainty, that the charge is true"); Nevada Revised Statutes Annotated § 175.211 ("If the minds of the jurors ... are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt."); North Dakota Pattern Criminal Instructions 2017 § K-1.10 ("You should find the Defendant guilty only if you have a firm and abiding conviction of the Defendant's guilt ..."); 7 Tenn. Prac. Pattern Jury Instr. T.P.I.-Crim. 2.03 ("moral certainty is required").
¶78 In contrast, Wis JI-Criminal 140 describes what a "reasonable doubt" is: "a doubt based upon reason and common sense," "a doubt for which a reason can be given," and "a doubt as would cause a person of ordinary prudence to pause or hesitate when called upon to act in the most important affairs of life." The instruction further describes what a "reasonable doubt" is not: "a doubt which is based on mere guesswork or speculation," "[a] doubt which arises merely from sympathy or from fear to return a verdict of guilt," and "a doubt such as may be used to escape the responsibility of a decision." Yet nowhere in Wis JI-Criminal 140 is the jury *589 told the required level of certitude they must reach to convict.
¶79 Second, the instruction could exacerbate the risk that the jury will convict based upon a lesser level of certainty than beyond a reasonable doubt when, after only defining "reasonable doubt," the jury is told not to search for doubt, but to search for "the truth." See Brief of Amicus Curiae Wisconsin State Public Defender at 8. While the adversary system as a whole involves a search for the truth, a juror's duty is to decide whether the State has proven its case beyond a reasonable doubt by examining only the evidence introduced at trial. Oftentimes the evidence seen by a juror is *207 constrained for various reasons including: evidentiary and constitutional rulings made by the circuit court, the availability of witnesses, and strategic decisions of counsel. Instructing jurors to search for the truth but not instructing them that the evidence at trial must convince them to a degree of near certainty may encourage jurors to believe that the truth lies outside of the courtroom. There is no way to accurately "test," and thus we will never know, the impact on jurors of the following words given at the end of Wis JI-Criminal 140: "While it is your duty to give the defendant the benefit of every reasonable doubt, you are not to search for doubt. You are to search for the truth."
¶80 The majority opinion dismisses Trammell's challenges to Wis JI-Criminal 140 based upon the recent consideration given to the instruction by the Criminal Jury Instructions Committee and this court's decision in Avila, where we held that "it is not reasonably likely that the jury understood Wis JI-Criminal 140[ ], to allow conviction based on proof below the Winship reasonable doubt standard." State v. Avila, 192 Wis. 2d 870, 889, 535 N.W.2d 440 (1995), overruled on other grounds by State v. Gordon, 2003 WI 69, 262 Wis. 2d 380, 663 N.W.2d 765. The majority rightfully places great weight on the Criminal Jury Instructions Committee's examination of Wis JI-Criminal 140 in light of the two recent law review articles and its subsequent decision not to change the text of the instruction. Majority op., ¶27. As we have previously recognized, the criminal jury instructions " 'are the product of painstaking effort of an eminently qualified committee of trial judges, lawyers, and legal scholars, designed to accurately state the law and afford a means of uniformity of instructions throughout the state.' "
*208 State v. Gilbert, 115 Wis. 2d 371, 379, 340 N.W.2d 511 (1983) (quoting State v. Genova, 77 Wis. 2d 141, 150-51, 252 N.W.2d 380 (1977) ). I know the Criminal Jury Instructions Committee has diligently considered whether to change the text of Wis JI-Criminal 140 in the past. I urge them to now consider the argument that is made here: the interaction of the lack of explanation of the quantum of certainty combined with the directive not to search for doubt but to search for "the truth" potentially confuses and misleads jurors regarding the level of certainty required to convict.
¶81 I therefore encourage the Wisconsin Criminal Jury Instructions Committee to review Wis JI-Criminal 140 in light of this particular challenge and revise Wis JI-Criminal 140 in the interest of justice. For the foregoing reasons, I concur.
¶82 I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

The majority repeatedly refers to the standard of proof as "reasonable doubt" instead of "beyond a reasonable doubt." Majority op., ¶¶2, 41, 48, 65, 67. The majority opinion likewise provides examples of definitions of "reasonable doubt" from other jurisdictions, but fails to acknowledge the failure of Wis JI-Criminal 140 to define "beyond a reasonable doubt." See majority op., ¶41 n.14.